We'll hear argument next in No. 20-2081, Tyler Research Corporation v. Envacon, Inc., Mr. Slava. Good morning, Your Honors, and may it please the Court. In this case, the District Court improperly abdicated jurisdiction over a case for infringement of a U.S. patent. For my research, this has happened only once before, by the Northern District of Illinois in Halo Creative and Design v. Comptoir des Indes, and this Court reversed that decision. In the present case, the District Court abused its discretion in at least three respects. First, the District Court abused its discretion by failing to hold defendants to their burden of proof. Second, the District Court abused its discretion by failing to accord the appropriate degree of deference to Tyler's choice of forum. And third, the District Court abused its discretion by rejecting Tyler's allegations of infringement. Defendants had the burden of affirmatively proving that Canadian courts are an adequate forum. In Piper Aircraft, the Supreme Court has stated that an alternative forum is adequate unless the remedy offered by the other forum is clearly unsatisfactory, as when, quote, the alternative forum does not permit litigation of the subject matter of the dispute. What is the subject matter of this dispute? It is defendants' infringing and tortious conduct committed in Indiana. Defendants have never explained how a forum located in Canada could possibly adjudicate Tyler's claim for infringement of a U.S. patent or, for that matter, its tort claims under Indiana law. What is the theory of infringement in Indiana? As I take it, these shutoff valves were manufactured in Canada and then imported in the United States, and you're claiming that the installation of the shutoff valve in a machine constitutes part of the manufacture? Is that it? No, that's not exactly correct, Your Honor. In the present case, we're asserting infringement of Claims 4 and 14 of the 053 patent, and those claims recite shutoff valves that have a specific feature not found in any other claim, namely a latch remotely mounted away from the housing. Thus, the manufacture of the invention of Claims 4 and 14 requires that the latch element must be remotely mounted away from the housing of the shutoff valve. The shutoff valve and the remotely mounted latches are separately manufactured, and they are only brought together for the first time when they are put onto trucks at the time of the… How do we know that? I don't see your complaint as saying that. Well, I believe in paragraph 41 of the First Amended Complaint, we allege that the infringement occurred in Indiana. What page of the appendix is that on? Your Honor, that is… JA-33. Thank you, Your Honor. …that the shutoff valve with the remotely mounted latch are brought together when they are installed into trucks, and therefore, at that moment, that is when the invention of Claims 4 and 14, and it is a well-established principle of patent law that each claim must be considered as defining a separate invention. So counsel, I have a different-this is Judge Moore, I have a different question for you. So why can't you obtain adequate remuneration for this suit as a whole in Canada, given that you can bring a breach of contract cause of action against the patentee for allowing its subsidiary, ENVACON, to commit this infringing act? So the breach of contract would be the exact same measure of damages as the infringement damages because that's the harm that you suffered directly as a result of the breach. That action could be fully compensable under Canadian breach of contract law. So why isn't the district court correct that you have adequate relief in Canada vis-à-vis the breach of contract cause of action against the patentee for allowing its subsidiary to cause this infringement in the U.S.? Your Honor, I wouldn't agree with that conclusion because the breach of contract claim, first of all, could only be brought against the patentee, JKKB Holdings, and that does nothing to address the infringement committed by ENVACON. Sure it does. Counsel, counsel, counsel, counsel, counsel, counsel, counsel. Your entire remedy for the breach of contract is they allowed infringement when they promised you the exclusive right to manufacture. They allowed someone else to manufacture. So your measure of damages, your only measure of damages, in fact, is the damage you suffered  That measure of damages would be identical, dollar for dollar, to what you would otherwise get for infringement. You wouldn't be permitted double recovery if you were made whole through the infringement claim against ENVACON in the United States. Your then breach of contract action in Canada would have no damages because you would no longer have been damaged because you would have been made whole by the infringement cause of action. Likewise, if you're made whole through the breach of contract, you're not entitled to double recovery for infringement. You can't get both. You can only get one. That will make you whole. So why isn't the breach of contract under those circumstances in Canada sufficient? And I'll tell you, this argument was clearly raised repeatedly in this case, and you never addressed it in your brief. Your Honor, the infringement is an intrinsically territorial activity, and that the infringement by Bosman and by ENVACON committed in Indiana is separately commensable, compensable. And to the extent that Tyler is seeking compensation from three defendants, that it is entitled to bring an action against these three defendants, and it may well be that it may not be recoverable against JKKB. It's entitled to sue all of the infringers and to seek, and the compensation may, for that matter, be only recoverable against ENVACON or Bosman, not JKKB. But counsel, what in the license agreement even gives you the right to seek damages? And the license agreement simply says you have the exclusive right to manufacture, but it's not a full assignment of all rights. Well, that's true, Your Honor, but as this court has said in Morrow v. Microsoft, parties that hold the exclusionary rights under a patent, who are often identified as exclusive licensees because of the grant of an exclusive license, to make the lease or sell the patent a grant of rights that included the right to seek damages, the right to sue, none of that is in this license agreement. But that opinion states that because the grant of an exclusive license to make, use, or sell the patent intervention carries with it the right to prevent others from practicing the invention. Okay, so that's what I'm saying, that's very different from getting damages. So even if you had the right to prevent others from practicing the invention under a license agreement, which I think is questionable, but even if you had that right, how would you have a right to seek damages? Well, that's a different issue in terms of the proving the quantum of damages, but the fact that the... No, I'm not talking about the quantum. I'm not talking about the quantum. I'm talking about even the right to seek damages. Your Honor, we would submit that that is carried with the exclusive right that has been granted under the exclusive license. The exclusive right to manufacture these shutoff valves carries with it the right to enforce that, and that right may require the joiner of the patentee, but in this case, the patentee is joined as a party. So that issue is not relevant here. The fact is that... Could I ask you a somewhat different question coming back to the question I asked you earlier about paragraph 41 of the complaint, which relies on this Bozeman affidavit, which as I see it, specifically says that in paragraph 11 on page appendix 180, Invocon has never manufactured the shutoff valves anywhere in the United States. How's that consistent with your notion that there was manufacturing in the United States? Well, Your Honor, all that does is it presents a factual dispute that while Tyler is saying that manufactured of the invention of claims four and 14 occurred in the United States... I'm not understanding. This is the very affidavit that you cited in the complaint to support the notion that manufacturing took place in the United States. Just a moment, Your Honor. That affidavit on 180 says Invocon's never manufactured in the United States, then in paragraph 14, it says it's installed the shutoff valves into customers' products. Right, but the installation of the shutoff valve with a remote latch is the point at which the remote latch and the shutoff valve are joined together. What about paragraph 11? He says Invocon's never manufactured in the United States. How does that support a claim that they infringed the patent by manufacturing in the United States? Well, Your Honor, first of all, the allegation in the complaint is that they have manufactured in the United States. They haven't yet to answer the complaint. They've yet to even join that, and to the extent that they would deny that, that would be a factual dispute. Counsel, an allegation that on its face is inconsistent with your other allegations doesn't have to be accepted by the court. I mean, your license agreement only says you have the right to manufacture shutoff valves. It doesn't say you have the right to practice a particular provision of a particular patent since the patent didn't even exist at the time that you signed the license agreement. It just says shutoff valves. Right, but in paragraph 41 of the complaint, we assert that the incorporation and installation by Invocon of shutoff valves constitutes manufacture. That's the allegation that we have made. And in ruling on this motion, the court disregarded that allegation. And even if Bosman contested that allegation, then it's a disputed fact. And what the district court then did is it construed the facts of the court said the court didn't disregard that allegation, that the court accepted that allegation, but says as a matter of law, that doesn't constitute manufacturing of shutoff valves. If I may just answer that question, the shutoff valves of claims four and 14 require the remotely mounted latch. And that does not occur until the incorporation and installation of the shutoff valve. Okay, but you will agree with me, will you not, that there were no claims at the time, there were no claims at all at the time you were granted the right to manufacture shutoff valves. Right? Right. So the answer is yes? Yes. But with the assertion of the complaint was certainly at a time when the patent had issued and that the grant of the exclusive right to manufacture became a right under the patent when the patent was issued. Okay. Are there other questions for Mr. Slavitt? Okay. Hearing none, we'll give you two minutes for rebuttal and we'll hear from Mr. Gaines. Good morning. My name is Bill Gaines and I represent the defendants and appellees in this matter. On the subject of the forum nonconvenience motion, I think quite clearly the court has focused its questions on the discretion of the district court. And there's been very little argument here that any of the findings of fact or the conclusions made by the district court judge were clearly erroneous. In the lower court, only three arguments were even raised by TRC and one paragraph, which is at JA-74. And two of those arguments, I think the district court handily dealt with and properly dealt with. How do you respond to the reliance on HALO? Well, I don't believe HALO has ever been cited in this proceeding, for starters. That doesn't mean it's not the law, right? Of course. But, you know, I don't believe anyone has cited or made any arguments based on HALO. It's a little astonishing that you didn't cite it since it seems to be the most relevant case that we have on forum nonconvenience. You're familiar with the case, right? I have. I can't say I'm highly conversant with the case, Your Honor. I do understand it came out of the district in Illinois. I'm sorry, I'm not conversant with the facts of that case. Mr. Slavitt, under our rules, you're obligated, if you're going to mention a case that's not cited in the briefs, in oral argument, to provide a copy to Mr. Gantz in advance. And you didn't apparently do that. That's not compliant with our rules. Yeah, so in terms of the observation of the court regarding the allegations of paragraph 41, it bears mentioning that this was an amended complaint and it was supposed to fix the problems which we raised on our first motion to dismiss. And in particular, they came back in their amended complaint and said that the infringement occurred because there were these installation of shutoff valves having remote latches. Well, one of the important paragraphs of the declaration of Mr. Kieran Bozeman at JA83 is paragraph 18, when he specifies that MBACON has never manufactured or sold shutoff valves having the remote latches in the United States. And that's the critical problem, that the plaintiff here never contradicted this affidavit. And the district court was entitled to rely upon this, particularly where the court... Counsel, you pointed us to appendix page 83, claiming it was the Bozeman declaration and was conclusive. Page 83 is not the Bozeman declaration. So can you figure out what page and what paragraph number you want to look at? I'm sorry, I must have been using a different... It's 180, I think, isn't it? Yes, we had more than one version of the joint appendix filed, Your Honor. I apologize. It is the... 180. That's the declaration from March 29, 2019. There's also... I'm referring to the declaration of June 14, 2019, which was attached to our motion to dismiss the amended complaint. But where is that? I'm digging for it, Your Honor. What's the date of it? It is June 14, 2019. I think it's the 244th. That is correct, Your Honor. So paragraph 18 is where we address this. The specific allegation regarding the remote shutoff valves, and that was never contradicted. Another important thing is just as a matter of common sense, installation of a part has never been determined to be manufacturing, which is the only right that the plaintiffs ever could have conceivably claimed as a manufacturing right. So the district court was properly focused on whether or not there had been any installation in the District of Indiana. But counsel, in paragraph 18, after it says, we never manufacture or sold them, it then says, well, we did create one or two demonstration samples in Edmonton. What does that mean? That means it did it in Canada only, but it never did it in Indiana? Yeah. They were only one or two demonstration samples manufactured or created in Edmonton, Canada, but they were never resulting in a commercialized product, and they were never sold to anyone, including the United States. So I think Mr. Kieran was thinking. But maybe in Canada? Well, I mean, there was never any sale to a customer, even in Canada. But, you know, if there's infringement in Canada, that has no bearing on whether there's either standing or a right to sue in the United States, because that doesn't bear on infringement in Canada, in the United States. Counsel, do you think that the appellant was given the exclusive right to manufacture shutoff valves with remote latches anywhere?  As it's been pointed out, this 1999 agreement, which actually is not between TRC and the patentee, it's between two individuals, there was no patent in existence at the time. So in our view, the plaintiff here is a bare licensee with a contractual. Where is that agreement? Where is that? The agreement is attached as a? JA-48, I think. Yeah, it's attached as an exhibit to the? JA-48. Actually, 49. Yeah, so, I mean, this is a two-page agreement, basically, a one-page agreement. It doesn't – it's not between the patentee. It doesn't relate to the patent itself. It just says that the parties will? Time out. So it relates to the inventor. Correct. And it specifically says the agreement includes any patent rights of the licensors, who is the inventor, in reference to the shutoff valve's design and development. So I don't understand. Are you alleging that this particular patent is not? Are you alleging either that Mr. Bozeman is not the inventor of this patent or that this patent doesn't pertain to shutoff valves or somehow is not? No, no. You know what? No. This agreement in 1999 is an agreement between Tyler and Mr. Krepela and Mr. Bozeman, who are the enlisted inventors on the patent, which ultimately was issued to JKKB. What we're arguing, in particular, in our supplemental briefs, is that this particular – the scope of the rights here that are granted, if any, to the TRC does not confer statutory standing because they're not a patentee, they're not an assinee, and they're not an exclusive licensee. But, counsel, statutory standing isn't a jurisdictional question, is it? I'll give you a hint. The Supreme Court has spoken on this. So statutory standing isn't really jurisdictional, is it? Article III constitutionally. Yes. Lexmark, as applied to this case, would indicate that the lack of statutory standing is not an Article III jurisdictional issue. Correct. Correct. So we have to address constitutional standing because that is, in fact, jurisdictional, the Article III type. We don't have a choice. But if they surpass the constitutional standing hurdle of just injury in fact, then we move on to the forum nonconvenience argument and decide whether or not the district court erred there. Is that procedurally right? I mean, I don't know why we would suddenly reach a question of statutory standing. Well, this court can actually reach the issue of statutory standing on a de novo basis, as indicated by Field Turk and the Mentor case. That wasn't your question on the supplemental question, but both parties ended up briefing the subject of statutory standing. But in terms of what type of license this is in responding to your question, Your Honor, is that we would submit that this is not a patent license of any kind. Wait, wait, wait. The WIAV case makes clear that an exclusive right to manufacture, which wouldn't extend to the defendant here, which would exclude the defendant, is the kind of license that gives right to sue. Well, Your Honor, the WIAV case involved a licensee which had the exclusionary rights to make, use, and sell, as well as an express right to sue. So that particular licensee was an exclusive licensee. This case is more like textile productions versus Meade in which you have an exclusive supplier with a bare license. They would not have standing to sue on that type of license, even if the patentee were joined. And that's the type of license we would submit that is represented by this 1999 agreement. Okay, I'm sorry. This is Judge O'Malley. Your point with respect to what the license covers is also relevant to your mootness argument, which is an Article III issue, right? Yes, and the reason for that is that the only right here is to manufacture. There's no right to sue. There's no right to license. There's not even a right to enforce. But if you do want to imply that this party at best had the right to enforce the patent, that implies a right only to seek an injunction. And that certainly expired when this patent expired. Counsel, I see a significant problem with your argument. You say the only thing they got was the right to manufacture. That's not true. They got the exclusive right to manufacture, and that's a really big difference because what the patent owner, or in this case the inventors, are promising for their future patent is that no one else will be allowed to manufacture it, only you. Well, the exclusive right to manufacture, even if that is granted by this agreement, is still not a sufficient right to do anything other than seek an injunction. If they did have that one step. Wait, what case suggests that? I mean, that would mean that an exclusive licensee normally wouldn't be able to sue for damages and could only get an injunction? That's not right under the cases. Well, I'm responding to the hypothetical, but there's not a case that's cited that indicates that a party such as this with one particular right, and that is only the right to make, can actually bring any type of lawsuit as a patent plaintiff. WIAV says if you have the right to exclude the defendant, you have the right to sue. Well, but the licensee in the WIAV case, Your Honor, had all of the rights. It had the right to make, use, and sell, and to sue, which makes it a lot like a lot of the other cases, which found that the parties were actual exclusive licensees, and then the issue was whether or not they had to join the patentee. But we would submit there is not a case that suggests that a party like this at best has the right to make, and nothing else. You've got to stop saying at best the right to make. They have the exclusive right to make. A patent doesn't grant people the right to make something. It grants them the right to exclude others from making something. Well, Your Honor, the understanding here is that they have an exclusive right to make, as stated in this agreement, and that doesn't rise to the level to give them any type of right under the Patent Act to actually seek damages for patent infringement. And, in fact, that the right to sue is separate from the exclusion rights is also kind of demonstrated by the Morrow case and the Propat case. And the lack of any express right to do anything with this right, we would submit would bar them from seeking any type of relief, but certainly not damages. They have no actual damages, patent damages. Counsel, under our case law, isn't it clear that when you transfer the right to sue, that results in the exclusive licensee being allowed to bring suit in its name alone? When you don't transfer the right to sue but are otherwise an exclusive licensee, you have to just join the patentee to ensure there aren't multiple potential suits. So isn't that the only difference that, under our case law, that transferring the right to sue results in? No, Your Honor. And that's because it depends on whether or not the plaintiff is a bare licensee or an exclusive licensee with sufficient rights to sue without the named plaintiff. But even a party that's a bare licensee, such as the Plaintiff and Textile Productions v. Me, they had a contractual. Counsel, assume that this is an exclusive licensee because they are. So just assume it. If you want to pretend it's a hypothetical, go ahead. It's not a hypothetical, but you can pretend it's so. So assume that these people are an exclusive licensee. Now, under our law, assuming they are an exclusive licensee, isn't the conveyance of the right to sue, isn't the only impact of that, whether you can sue in your name alone or whether you must join the patentee to your suit? I don't think so, Your Honor, because in the Morrow case in particular, both the party that had the right to sue and the holder of the exclusionary rights were actually joined. Because they sued the patentee in that case. They sued the patentee in Morrow. But the inclusion of them as a party in the case didn't give the plaintiff, in that case, statutory standing to sue because the right to sue was divorced from the right to make, use, and sell. And here we also have that. The same thing happened in the Propat case. A plaintiff with the right to license and the right to sue but no exclusionary rights and no right to assign, which is here, lacks standing to sue even if the patentee were joined. So that's the crux of the matter here is that the only right alleged here is an exclusive right to manufacture the patented article. And that's just not sufficient to confer any type of statutory standing based on this agreement. Okay. Unless my colleagues have further questions for Mr. Gantz, I think we're finished with your argument. Hearing none, Mr. Slavich, you have two minutes. Thank you, Your Honor. Let's make a couple of points here. Defendant's counsel asserted that Bosman's declaration went uncontested. That is not true. At page 166 of the joint appendix is the first page of a several-page declaration of Jonathan Tyler in which he explains how the latch, how the shutoff valves work and the latch release mechanism when it is installed for operation constitutes manufacture on the site. So that, again, that point that the defendant's made was not correct. Tyler is not a bare licensee as the court has recognized. It is the exclusive licensee of the right to manufacture. And defendant counsel's assertion that the right, that Tyler has only the right to seek an injunction and not damages is an assertion that is made without any support in the supplemental brief. There is no case law associated with that assertion. And the final point I'd like to make is that the exclusive right to make as one of the sticks in the bundle of rights that a patent carries is sufficient to entitle Tyler to assert the law, to bring the lawsuit, albeit with the patentee joined as a party. And in this case, JKKB, the patentee is joined as a party. So the final point I'd just like to make is that the standard to be applied in foreign nonconvenience analyses is that the chosen, the trial in the chosen forum would have to establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience. And those words are found nowhere in the district court's opinion. The district court makes passing reference to a heavy burden, but makes no findings with respect to vexation, oppressiveness, or manifest injustice that would result by proceeding in the District of Indiana. Okay. Thank you, Mr. Slava. Thank you, Mr. Gants. The case is submitted. That concludes our session for this morning. The Honorable Court is adjourned until tomorrow morning at 10 a.m.